Number 181412, United States v. John Sylvia Jr. Mr. Court, my name is Henry Brennan and I'm here on behalf of the appellant, James Sylvia Jr. Your Honor, Chief Justice Howard, may I reserve one minute for rebuttal? Yes. Thank you. In this case, trial counsel for Mr. Sylvia's first trial chose a strategy at trial and made promises for that trial strategy that he just could not meet and there was no likelihood he would be able to meet the promises he made to the jury. He essentially promised two things to the jury. First, that he would prove that the key witness was a liar. And secondly, he promised the jury that Mr. Sylvia had committed no crime because he assigned interest in shares of stock rather than selling stock. Trial counsel should have known that he had no evidence to impeach the key witness because he had done essentially very little if nonexistent trial preparation to obtain documents, witnesses, and evidence to impeach that witness at trial. Secondly, other than his opening and closing statement, trial counsel did nothing to rebut the repeated suggestions of the prosecution that assigning interest in shares of stock was illegal. He did not consult an expert, did not call an expert, and did not examine any witnesses to suggest that his theory and promise to the jury that this was a proper conduct had any support whatsoever in fact and law. At the time of trial, it should have been absolutely clear to trial counsel that his strategies had no chance of success. The preparation for a trial begins well before the trial. Counsel, what was the alternative strategy that you think existed that you think made this choice of strategy inherently unreasonable? I do not think that the choice of strategy was inherently unreasonable. I think that if a trial attorney chooses this strategy, they should know they have an obligation to find evidence. I'm sorry, your argument is it was an okay strategy, he just didn't prepare adequately on either ground? Yes, it was not an unreasonable strategy. Unreasonable was the fact that he attempted to cross-examine the lead witness without any documents to impeach him, without any documents to contradict him, without any evidence to show that he had lied. If you read the cross-examination, there are no documents he presents to that witness to contradict anything that the witness has. And what were the documents he should have come up with? The lead witness suggested that the appellant had fabricated a subscription agreement. From the beginning of this case, the appellant insisted to his trial attorney and the predecessor counsel that documents existed to show that he had an actual subscription agreement that was valid. He urged his counsel to obtain records from the lead witness, including his e-mails, the corporate book, and witnesses to contradict him. In fact, the first attorney, predecessor counsel, thought that these documents were relevant because he actually filed a discovery motion, and at the motion for a new trial, he explained that he used his independent discretion and believed that these were reasonable requests and relevant. And what was the response to the discovery motion? The government did not have them in their possession, so it required subpoenas. It required an attorney to care enough to take action and ask the court for subpoenas. And do you know that these documents existed? The only evidence is the evidence that the client suggested they existed. And your client was found by the trial judge to be a liar. No doubt. As a disqualified lawyer, it should have been clear to the attorney that this client would have no credibility with the prosecution, with the court, or any witness that heard about his past history. That is why it was critical for the attorney to do the job, not the client. The client identified 30 witnesses that this attorney could have interviewed, some of them to show the existence of these documents. Many of them were interviewed, and it turned out your client had lied about what they would say, and several of them actually would have said things that incriminated your client. I disagree with the general characterization. Some of them were interviewed. Two of them, the attorney tried to posture he didn't call them out of strategic reasons because one said, Mr. Silvia said you're not remembering things correctly, not that he was a liar. And the other one, he thought to be unhelpful, and when asked the details of why he'd be unhelpful, the attorney could not give an answer during the motion from the trial. If I understand your argument, you seem focused on the deficient performance prong, but there's a prejudice prong too. There certainly is. So how are you going to be able to show prejudice if you don't have a witness who can credibly testify that the documents that weren't obtained do exist, and you don't have the documents? It is incumbent upon a trial attorney to ferret out and find the evidence. That's why the performance would be deficient. Yes. But in the absence of any indication that that deficient performance prejudiced you, it seemed like how can you show prejudice if you don't have some indication that what they didn't seek out was there to be found? The only indication you have is testimony that was deemed not credible. Well, there is indication. At the motion from the trial, we introduced hundreds of e-mails, and in those e-mails there are witnesses. In fact, one, Phil Worre, who reached out to the defense team and said that he had. . . Okay. So you're off your document argument and you're on to your witness argument? They're related because many of the witnesses could also attest the fact that there was a subscription agreement.  And so there's twofold. There's documents that should have been subpoenaed. Okay. Once again, there's no indication that those witnesses would have testified as your client hoped they would. Well, there wouldn't be an indication because the defense counsel never interviewed most of them. You were on the prejudice prong. Yes. And if a witness were to come in. . . . . . hearing ineffective assistance where you would have had affidavits from those witnesses saying what they would testify, and that's not in the record, is it? That is not. That is not. However, there are hundreds of e-mails between witnesses, and some of them clearly have evidence that would have been helpful for the defendant during the trial. I recognize that the existence of affidavits would have been helpful. In this circumstance, there are no affidavits. But there's not because there was a contact and it was a negative contact. There's an absence of evidence on that point. This case, I think the government cites a few cases which I think are very helpful. They cite a few cases about when an attorney refuses or does not investigate a claim, such as an alibi. And in those cases, there is no basis, really, reasonable basis to pursue a defense claim, and therefore the defendant doesn't have the obligation to pursue it. In this case, the trial attorney chose the strategy. Any trial attorney knows that when you confront a witness, they're going to likely maintain whatever their version is, and if you don't have some type of witness or evidence to contradict them, it's unreasonable to take the strategy. So back to the question, was this an unreasonable strategy? Not if it was done effectively. Done with no evidence and no witnesses and no subpoenas, it was wholly, wholly unfair. There was absolutely no way he could succeed in this case, asking the witness if they were lying and they denied that they were lying. There was absolutely no chance of any type of trial. I know the prejudice is the more difficult part for me in this case, but Mr. Silvey was put in a position where he went to trial where he didn't have someone representing his interests. His attorney conceded two and a half months before trial on his affidavit because of his office's obligations. He was overwhelmed, fully unprepared for trial. In two and a half months, nothing was done effectively to get ready for trial. This client urged continually his client to meet with him, to talk to him, to interview witnesses, and he was ignored. He was ignored. When he faced trial and tried to defend himself, he had the choice whether or not he was going to let the evidence remain untested or go up unprepared to testify without the support of his attorney, who, by the way, accused him of stealing records in his office later to call him and say, No, I was wrong. You've reserved some time. Thank you. Good morning. May it please the Court? Alexia Diamantis on behalf of the United States. Lest we risk losing the forest for the trees here, I'd like to respond to the defendant's arguments in the context of a few overarching points. The first relates to the standard for proving ineffective assistance. I won't regurgitate that familiar standard here, but I do want to emphasize that deficient performance requires a showing that counsel's choices were so patently unreasonable that no competent attorney would have made them. And moreover, as to both deficient performance and prejudice, the burden is the defendant's, which brings me to my second point. The defendant has failed to show that the primary document that he says should have been found actually exists or that the primary witnesses that he says should have been called could actually have testified as he claims they could have. Now, the defendant has attempted to gloss over the adverse credibility determination made by the district court, referring to it in one straight line in his brief and effectively arguing in his reply brief that the district court did not in fact find that a valid subscription agreement does not exist. But what the district court did find is that it wasn't willing to find that a subscription agreement did exist if not supported by something other than Sylvia's word alone. And so where all we have here is Sylvia's word that this document exists, that finding is tantamount to a conclusion that whatever deficiencies might have existed with respect to going after that document, the defendant cannot show prejudice. There was a reference to e-mails and that the e-mails make references to the existence of the document. My understanding is that the defendant's argument is that certain e-mails, specifically e-mails belonging to Tommer, would have referenced this document. But those actual e-mails are not in the record. They are not in the record. And the defendant argues that defense counsel should have requested them. And I think this is perhaps the category in which it's easiest to engage in a little bit of Monday morning quarterbacking and think, well, why not just request those e-mails? But deficiency is judged based on what was known to the attorney at the time the decision was made. And what was known to this attorney at the time the decision not to request the Tommer e-mails was made was that according to his client, Tommer had fabricated a subscription agreement to effectively use him as a scapegoat. And so the concerns about how Tommer might have responded to a Rule 17 subpoena I think were well-founded. Moreover, even absent those concerns, there's always the risk that the e-mails would have revealed further inculpatory information that would have further hamstrung defense. Now, in terms of prejudice, I do want to point out in relation to the witnesses that, as has been noted by I think both Judge Barron and Judge Lynch, the defendant has not actually come forward with any evidence to suggest that the witnesses, in fact, would have testified as he's claiming. And, in fact, the evidence that we do have shows that a number of the witnesses, including the two most important witnesses in Sylvia's view, shows that they could not have testified in the manner that he says. Now, I do also want to address this notion of an expert witness because what I understand the defendant to be saying is that an expert would have testified that pledging stock as collateral for a loan is not the sale of a security. But no expert could have testified to that because that's simply not the law. Now, perhaps recognizing, as he has here today as well, that the prejudice prong is a bit difficult for him to prevail on here, the defendant has resorted to these generalized arguments about a sense of palpable distrust, distrust by counsel and a resulting inability of counsel to defend him. But the relevant question, of course, is whether or not, notwithstanding any tensions in the attorney-client relationship, counsel's performance satisfied an objective standard of reasonableness. And here it did. And that takes me to sort of the third overarching point that I want to make here, which is that despite Sylvia's best efforts to paint Attorney Haney as inexperienced and ill-prepared, I think the record shows that he was anything but. The district court in this decision cataloged a number of things that Haney did on the defendant's behalf, including filing a successful motion to sever the various counts. He also submitted, by my count, more than 14 pretrial and midtrial filings, including motions to eliminate. He also, contrary to Sylvia's claim, did effectively attack Tomer, given the evidence that he had. And in that regard, I would refer the court to Haney's closing statement, which I think provides a nice summary of the various points that he did score against Tomer. Finally, and perhaps most underappreciated, Haney successfully prevented Tomer or, excuse me, prevented Sylvia from being impeached using the SJC and MSD findings. And he did so, moreover, in the context of introducing documents that the government had every good reason to believe were falsified. So in sum, this was not an experienced, ill-prepared counsel. This was very able counsel. And so in conclusion, the defendant can't show either the deficient performance or the prejudice that would be required to prevail on his claim. Thank you. Thank you. May I? The government cites in their brief an argument that it is a reasonable strategy not to get e-mails from the lead witness that your client says will have documents that defeat his entire argument. And the reason why it's justified not to get those e-mails is because that person might commit fraud  If that was the idea of litigation, imagine any civil litigation where you get production of documents from your adversary. You would never do it because you'd be afraid there would be something that you can't articulate that is in there. It's an absurd position to take for somebody who didn't do their job. Monday morning quarterbacking, this client urged the initial attorney from the date of arraignment all the way to the date of trial through hundreds of e-mails to talk to these witnesses and get these documents, and no effort was made. None, other than Green Hills two and a half years later. None. That's not Monday morning quarterbacking. That is an insistent client who expresses an effort to get documents that an attorney just doesn't have the time or the care to do because he's a disbarred lawyer. And the government, if I may, one second, they talk about the assigning interest is not a proper legal defense. It's not a proper legal defense, so therefore they didn't need an expert. If it was not a proper legal defense in the government's opinion, then this attorney should not have argued it as his lead argument. It was an absolutely baseless offense. Isn't it ineffective that he argued that as the defense at trial without any support? Thank you.